MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Plaintiff, *v.* TAILORED WOMAN, INC., Defendant.

Supreme Court, Special Term, New York County, February 10, 1949.

*George A. Spiegelberg* for plaintiff.

*M. James Spitzer* and *Philip Feldman* for defendant.

LEVY, J. In the course of an examination before trial certain specific objections were raised and a general objection was raised involving the privilege of the client. The difficulty arose because the president of the plaintiff corporation verified the complaint upon information and belief, claimed no personal knowledge of the matters which are subject of the examination, and that the verification was made upon advice of counsel based upon investigation conducted by him and others as his employees or agents for purpose of suit and preparation for trial. Informal permission was granted plaintiff for reargument with respect to the general objection, its contentions having been overruled. Succinctly stated, plaintiff contends with considerable earnestness that defendant may in no circumstance in this litigation have examination with respect to the matters concerning which plaintiff is without personal knowledge.

The action seeks to bring within a percentage rental lease certain sales made upon the leased premises, it being claimed

by defendant the sales as made do not come within such lease. It is conceded plaintiff's counsel has the information which has not come from any person or source associated with plaintiff other than through his efforts and guidance. It contends that information acquired in preparation for trial, whether by direction of the client or counsel, is embraced within the privilege and that a client should be able to feel free to employ counsel to conduct investigation in an efficient and intelligent manner without fear that the fruit of the effort will thereby lose its secrecy and privileged status. Thus it is urged that communications made by counsel to this plaintiff or information and data acquired by the former in the course of his professional relationship are sealed. Information thus ferreted out by employees or agents of counsel are protected against disclosure.

In *Matter of King* v. *Ashley* (179 N. Y. 281, 284) the Court of Appeals said: "It was settled in the cases which arose before the enactment of the Code provisions on the subject that the privilege of the attorney (or rather that of the client, for it is such) does not extend to everything which comes to his knowledge while acting as attorney or counsel, and does not include information derived from other persons or other sources. (*Crosby* v. *Berger,* 11 Paige, 377; *Bogart* v. *Bogart,* 2 Edw. Ch. 399; *Coveney* v. *Tannahill,* 1 Hill, 33.) The section of the Code is a mere re-enactment of the common-law rule. (*Hurlburt* v. *Hurlburt,* 128 N. Y. 420.) The appellant was, therefore, properly required to give all his information or knowledge on the subject that did not involve communication with the deceased."

And in *Matter of Krup* (173 Misc. 578) the rule was stated: "The substance of the rule accordingly appears to be that if there is any third party in existence who possesses knowledge sufficient to enable him to testify respecting the subject-matter in question, no privilege exists, and the prohibition of section 353 of the Civil Practice Act does not apply."

From the matter submitted upon this application it seemed clear that were persons who engaged in the investigation and produced the information and data in counsel's file to be called as witnesses by defendant, protection would not be afforded merely because involved are matters developed in preparation for suit or trial.

In *Baumann* v. *Steingester* (213 N. Y. 328) an attorney was directed to give testimony of instructions given to him by his client testatrix since a third person was present, evidencing the absence of confidence. Certainly it has not appeared that investigation was conducted and basis for action uncovered in

that veil of confidence which sometimes cloaks the communication imparted by client to counsel.

Moreover, plaintiff took the position in its brief that the information was given by its counsel to it " with a view legally to advising plaintiff as to the verification of a document in a contemplated litigation. We have shown that what was said by the attorney to the client under these circumstances is privileged. It is immaterial that the factual basis of the information on which the attorney gave the advice may not be privileged." And in his communication to the court of November 26, 1948, counsel stated: " We contended in the argument before your honor, and we still contend, that.what is privileged is the conversations between us as attorneys and our client which were had preliminary to the bringing of the present actions and as a result of one of which the client executed the complaint setting forth a substantial number of matters on information and belief. What we concede is that if the client had personal knowledge of the matters it, through its officers having such knowledge, could be compelled to disclose it on the examination before trial which was granted to it. It is conceded that that officer has no personal knowledge of those facts. What knowledge the officer has is pure hearsay, procured as a result of communications had with the company's attorneys, which communications were made in advising the client with respect to a proposed litigation which is now before the courts. We contend that such communication made to a client in order to advise it concerning its legal rights with respect to a litigation to be brought is a communication which in the courts of this state is privileged and that, as pointed out in the memoranda submitted to your honor, the rules concerning the scope of the examinations in the Federal Courts have no application in this state, though as we also pointed out when the precise question in the case before your honor is raised in the Federal Court the result is the same." It is a strange doctrine that would cloak with protection information that could be elicited by the adverse party from third persons concededly subject to discovery merely because the same information was the basis of legal advice. The contention is thus made that information at one time not within the privilege may thereafter be brought within it.

In coming to the conclusion reached the court has given considerable weight to the recent decision of the Appellate Division in *Dorros, Inc.,* v. *Dorros Bros.* (274 App. Div. 11). The limits circumscribing examinations before trial have undergone relaxa-

tion which may be slow but continuing. The *Dorros* case constitutes a broad advance. It results in a considerably closer approximation of the practice prevailing in the Federal jurisdiction with respect to examinations. The rule there clearly supports the view of the defendant. As the insistence upon complete exposure becomes more demanding, it is inconceivable that the interpretation and application of privilege will not be likewise re-examined, even if it be assumed that in this instance it is at all necessary to do so in order to overrule the objection. If a defendant is to have the same right with respect to examination before trial of plaintiff that the latter has of the defendant, it is difficult to see how after plaintiff has relaxed secrecy by disclosure of his claim in a pleading, he may thereafter claim the matters in support of it are privileged merely because they are not of his personal knowledge and have been gathered by counsel. In such event all a plaintiff need claim is that his attorney has developed the matters and communicated them to him and thereby completely thwart the right so recently given the defendant. It seems neither reasonable nor logical that such a result may be countenanced.

For aught that appears, the very information that defendant seeks to elicit in support of the items of examination could have been obtained also by plaintiff and communicated by it to counsel and by the latter incorporated in a complaint. Certainly it is not contended that because of such communication by the client to counsel the defendant's examination will be wholly frustrated. Is the scope of the examination to be lessened then because the information came from other sources to counsel and by him communicated to the client?

The prohibition was undoubtedly a development not alone in the interest of the client but as a solution of the conflict confronting an attorney torn between the legal duty to speak in response to subpœna and the moral duty to hold confidence inviolate. But it is the confidence reposed in him and not the reverse that the statute protects. It is insufficient, therefore, to suggest that the prohibition is operative upon the sole ground here claimed. In all the circumstances reason dictates that the rule so well and frequently enunciated in the Federal jurisdiction and particularly in the cases cited by defendant upon the original argument (see *Hickman* v. *Taylor*, 329 U. S. 495) is one to which we must subscribe. The Appellate Division in the *Dorros* case (*supra*) indicated clearly its decision was, in measure at least, the culmination of long consideration and discussion,

including the present rules allowing broad scope to examinations in the Federal jurisdiction. It asked the question " Does the limitation which has grown up around that theory conform to reality and does it effectuate the purpose of the statute ", and answered " That is the test of whether the limitation should be adhered to or abrogated." (p. 13.) It added:

" The purpose of examinations before trial, like the trial itself, is to get out the facts. As the trial should be an open meeting on the merits, both sides should have a fair opportunity, in advance of trial, to garner evidence. * * * Professional opinion, in the light of experience, has steadily moved in favor of broadening the permissible scope of examinations. The Federal courts, under the Federal rules, have moved all the way from not countenancing examinations at all to a free examination of parties and witnesses. The Judicial Council has recommended allowing each party to examine the other, without regard to the burden of proof. In England a general discovery of evidence before trial is permitted. * * *

" In practice, we think that a liberal and practical view should be taken of what is necessary. There is so much merit in a disclosure of the facts in advance of trial that it should be allowed whenever legitimately sought. Undoubtedly fear of abuse in examinations before trial has operated to curtail their extension. It would seem, however, that the possibilities of abuse can be adequately covered by judicial surveillance, without the imposition of arbitrary restrictions." (pp. 13–14.)

In the same way, section 353 of the Civil Practice Act may often tend to suppress truth and defeat justice, but it was deemed essential to the administration of justice that the hazard be chanced, that the greater good of the peace of mind of the litigant be secured. Therefore, if it is at all necessary to do so, it is deemed appropriate at this time to reconsider the application of the doctrine in the light of the *Dorros* case (*supra*) and the Federal practice which quickened it. Upon this basis it is clear that the rule has not been and should not be applied in the manner for which plaintiff contends. Indeed, one of the essential conditions of the privilege is that " The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." (8 Wigmore on Evidence [3d ed.], § 2285.) The *Dorros* case indicates that the greater good is to be accomplished by permitting wider latitude in examinations and by a closer approach to the Federal system.

Some question has arisen concerning the interpretation to be given the opinion of the Court of Appeals in *Bloodgood* v. *Lynch* (293 N. Y. 308). That case was concerned with the request for production of a document, as is clearly shown by the citation of Wigmore on Evidence (Vol. 8, § 2307). Regardless what interpretation may be given it in the application of the doctrine to the facts of that case, clearly it is not authority for the broad propositions for which plaintiff contends and which would, indeed, lead to absurd results. For example, were plaintiffs in negligence suits entitled in this department to general examinations of defendants, they could in fact get nowhere for it need only be urged that the insurance carrier conducted an investigation for its counsel and made a report to him.

It is the determination of the court, therefore, that the original decision remain unchanged.